FILED
2025 Feb-03 AM 11:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| MOOZHAN NIKPANAH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:24-cv-00404-NAD |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF STATE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION TO DISMISS

For the reasons stated below, and on the record in the November 21, 2024 motion hearing, the court **GRANTS** the "Opposed Motion To Dismiss First Amended Complaint" (Doc. 24) filed by Defendants—i.e., the United States Department of State; the United States Embassy in Yerevan, Armenia; Antony Blinken, the United States Secretary of State; and Kristina Kvien, the Ambassador of the United States at the United States Embassy in Yerevan, Armenia. *See* Docs. 26, 28 (briefing on motion); Doc. 15 (briefing schedule); minute entry, entered: 11/25/2024. Separately, the court will enter final judgment.

## BACKGROUND

### A.    Factual background

In the first amended complaint, Plaintiff Moozhan Nikpanah alleges the

1

following:  Plaintiff Nikpanah is a United States citizen.  Doc. 21 at 1.  Nikpanah's parents, Seyedmostafa Nikpanah and Monir Mostaghimi, are Iranian citizens who currently reside in Iran.  Doc. 21 at 1, 3.

In April 2021, Nikpanah filed immediate relative visa petitions for her parents with U.S. Citizenship and Immigration Services (USCIS).  Doc. 21 at 3.  Nikpanah alleges that USCIS approved the petitions, which resulted in the cases being transferred to the U.S. Embassy in Yerevan, Armenia, for consular interviews.  Doc. 21 at 3–4.

On October 26, 2023, the State Department conducted visa interviews for Nikpanah's parents.  Doc. 21 at 4.  Nikpanah alleges that, "[f]ollowing the interviews, the consular officer requested additional information, and Plaintiff's parents submitted completed Forms DS-5535 shortly after," but that, "[s]ince that time, the agency has refused to issue a final decision in these cases."  Doc. 21 at 4.

The Department of State Consular Electronic Application Center website shows the status of Nikpanah's parents' applications as "Refused."  *See* https://ceac.state.gov/CEACStatTracker/Status.aspx?App=IV (last visited February 3, 2025); Fed. R. Evid. 201 (judicial notice); *see also Graham v. Attorney Gen., State of Georgia*, 110 F.4th 1239, 1242 n.6 (11th Cir. 2024) (judicial notice of agency records).

In briefing and during the motion hearing on Defendants' motion to dismiss,

Nikpanah's counsel clarified that the visa applications now are in post-refusal "administrative processing."  Doc. 26 at 7; Doc. 31 at 5–8.

### B.    Procedural background

On April 2, 2024, Nikpanah filed an initial complaint in this court, requesting that the court "issue a writ of mandamus compelling Defendants to adjudicate long-delayed immediate relative visa applications" for her parents.  Doc. 1 at 2.

On July 8, 2024, Defendants filed a motion to dismiss Nikpanah's complaint. Doc. 8.  The parties consented to magistrate judge jurisdiction.  Doc. 15; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

On August 13, 2024, with leave of court (*see* Docs. 19, 20), Nikpanah filed an amended complaint (Doc. 21), which mooted Defendants' initial motion to dismiss.  *See* Doc. 22.  In her amended complaint, Nikpanah again requests that the court compel Defendants to adjudicate the visa applications for her parents.  Doc. 21 at 1.  Nikpanah seeks mandamus relief based on the Administrative Procedure Act (APA), 5 USC § 551 et seq., requesting that the court compel Defendants to issue finalized decisions on her parents' visa applications, and alleges a due process claim pursuant to the Fifth Amendment.  Doc. 21 at 4–6.

On August 24, 2024, Defendants filed this motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that "Plaintiff cannot demonstrate that there is a mandatory, non-discretionary duty that the

consular officer failed to take," and that Nikpanah has no cognizable due process claim related to visas for her parents, among other things.  Doc. 24 at 1–2, 5.  The parties fully briefed the motion.  Doc. 26; Doc. 28.  Nikpanah attached to her opposition brief an affidavit about the hardships that she has endured while her parents have been unable to obtain visas.  Doc. 26-1.

On November 21, 2024, the court held a hearing on Defendants' motion to dismiss.  *See* Doc. 29 (order setting hearing); minute entry, entered: 11/25/2024; Doc. 31 (transcript).

### C.    Legal background

The Supreme Court "has recognized that the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'"  *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)).  As such, "foreign nationals seeking admission [to the United States] have no constitutional right to entry."  *Id.* at 703.

Instead, an alien generally needs a visa to enter the United States.  *See Kerry v. Din*, 576 U.S. 86, 89 (2015); *Department of State v. Muñoz*, 602 U.S. 899, 903 (2024) ("To be admitted to the United States, a noncitizen typically needs a visa."); 8 U.S.C. § 1101 et seq.

There is a special visa application process for "aliens sponsored by

'immediate relatives' in the United States." *Kerry*, 576 U.S. at 89 (citing 8 U.S.C. §§ 1151(b), 1153(a)).  "Under this process, the citizen-relative first files a petition on behalf of the alien living abroad, asking to have the alien classified as an immediate relative." *Id.*  "If and when a petition is approved, the alien may apply for a visa by submitting the required documents and appearing at a United States Embassy or consulate for an interview with a consular officer." *Id.*

"Before issuing a visa, the consular officer must ensure the alien is not inadmissible under any provision of the [Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq.]." *Kerry*, 576 U.S. at 89.

By statute, "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer."  8 U.S.C. § 1202(b).

A consular officer cannot issue a visa to an alien (1) if "it appears to the consular officer" that the alien "is ineligible to receive a visa . . . under [8 U.S.C. § 1182], or any other provision of law," (2) if the application does not comply with Chapter 12 of Title 8 of the U.S. Code or the applicable regulations, or (3) if "the consular officer knows or has reason to believe" that the alien "is ineligible for a visa . . . under [§ 1182], or any other provision of law."  8 U.S.C. § 1201(g)[1]; 8 U.S.C.

---

[1] "No visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued

§ 1182(a) ("aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States").

Under the applicable regulations, "[w]hen a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must [1] issue the visa, [2] refuse the visa under INA 212(a) or [8 U.S.C. § 1201(g), which codifies INA § 221(g)] or other applicable law or, [3] pursuant to an outstanding order under INA 243(d), discontinue granting the visa." 22 C.F.R. § 42.81(a); *see* 8 U.S.C. §§ 1201(a), (g).

So, if a consular officer determines that an alien is ineligible to receive a visa, the visa is refused. *See* 8 U.S.C. § 1201(g); 22 C.F.R. § 42.81(a). And the applicant has the burden to "establish that he [or she] is eligible to receive such visa." 8 U.S.C. § 1361; *see* 22 C.F.R. § 40.6.

In addition, "[i]f a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." 22 C.F.R. § 42.81(e).[2] "If the refusal has not been overcome within one year, any

thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law . . . ." 8 U.S.C. § 1201(g).

[2] *See* 22 C.F.R. § 42.63(c) ("The officer may require the submission of additional information or question the alien on any relevant matter whenever the officer

documents not relating to the refusal shall be removed from the file and returned to the alien." 22 C.F.R. § 42.81(b).[3]

## LEGAL STANDARDS

### A.    The Mandamus Act, and the APA

Under the Mandamus Act, district courts "have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

According to the Supreme Court, mandamus "is intended to provide a remedy

---

believes that the information provided in Form DS-230 or Form DS-260 is inadequate to determine the alien's eligibility to receive an immigrant visa. Additional statements made by the alien become a part of the visa application. All documents required under the authority of § 42.62 are considered papers submitted with the alien's application within the meaning of INA 221(g)(1)."); *see also* 22 C.F.R. § 42.62(b) ("Every alien executing an immigrant visa application must be interviewed by a consular officer who shall determine on the basis of the applicant's representations and the visa application and other relevant documentation" the "applicant's eligibility to receive a visa").

[3] *See* 22 C.F.R. § 42.83(b) ("An alien's registration for an immigrant visa shall be terminated if, within one year following the refusal of the immigrant visa application under INA 221(g), the alien has failed to present to a consular officer evidence purporting to overcome the basis for refusal."); *see also* 22 C.F.R. § 42.83(c) ("If paragraph (b) applies, the consular officer at the post where the alien is registered shall, upon the termination of registration, notify the alien of the termination and the right to have the registration reinstated if the alien, before the end of the second year after the INA 221(g) refusal, establishes to the satisfaction of the consular officer at such post that the failure to present evidence purporting to overcome the ineligibility under INA 221(g) was due to circumstances beyond the alien's control.").

for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). In the Eleventh Circuit, "[m]andamus is an extraordinary remedy which should be utilized only in the clearest and most compelling of cases." *Cash v. Barnhart*, 327 F.3d 1252, 1257 (11th Cir. 2003) (quotation marks and alterations omitted).

The Eleventh Circuit has explained that a district court may exercise jurisdiction over a mandamus claim "only if (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy is available." *Serrano v. United States AG*, 655 F.3d 1260, 1263 (11th Cir. 2011) (citing *Cash*, 327 F.3d at 1258). "The party seeking mandamus has the burden of demonstrating that his right to the writ is clear and indisputable." *Id.*

Likewise, the APA provides that a reviewing court may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The APA also provides that, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b).

A plaintiff's claim seeking to compel agency action "under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. Southern Utah Wilderness All.*, 542 U.S.

55, 64 (2004). "The limitation to required agency action rules out judicial direction of even discrete agency action that is not demanded by law (which includes, of course, agency regulations that have the force of law)." *Id.* at 65.

"Although the APA independently does not confer subject-matter jurisdiction, 28 U.S.C. § 1331 confers jurisdiction on federal judges to review agency action under federal-question jurisdiction." *Perez v. United States Bureau of Citizenship & Immigr. Servs. (USCIS)*, 774 F.3d 960, 965 (11th Cir. 2014) (citing *Califano v. Sanders*, 430 U.S. 99, 105 (1977)). "Where a statute bars judicial review or agency action is committed to agency discretion by law, the [APA] does not permit judicial review." *Bouarfa v. Secretary, Dep't of Homeland Sec.*, 75 F.4th 1157, 1161 (11th Cir. 2023); *see also* 5 U.S.C. § 701 (the APA does not allow for judicial review of agency action that "is committed to agency discretion by law").

Thus, whether a plaintiff seeks a writ of mandamus or to compel agency action under the APA, the court only has jurisdiction where the plaintiff can identify a discrete, nondiscretionary—that is, mandatory—duty for the agency to act. *See, e.g.*, *Heckler*, 466 U.S. at 616; *Norton*, 542 U.S. at 64. And a request for mandamus requires further that the plaintiff show a right to relief that is "clear and indisputable." *E.g.*, *Serrano*, 655 F.3d at 1263.

## B.    Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian*

*Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Pursuant to Rule 12(b)(1), a party

can move to dismiss for lack of subject matter jurisdiction.  *Id.*  A court must dismiss

an action if it determines at any time that it lacks subject matter jurisdiction.  Fed.

R. Civ. P. 12(h)(3).

"It is a plaintiff's burden to allege, with particularity, facts necessary to

establish jurisdiction."  *Murphy v. Secretary, United States Dep't of Army*, 769 F.

App'x 779, 781 (11th Cir. 2019) (citing *Morrison v. Allstate Indem. Co.*, 228 F.3d

1255, 1273 (11th Cir. 2000)); *see also Travaglio v. American Exp. Co.*, 735 F.3d

1266, 1268 (11th Cir. 2013) ("When a plaintiff files suit in federal court, she must

allege facts that, if true, show federal subject matter jurisdiction over her case

exists.").

## C.     Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8 requires that a complaint must include "a

short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2).  Under Federal Rule of Civil Procedure 12(b)(6), the court

can dismiss a complaint for "failure to state a claim upon which relief can be

granted."  *Id.*

To survive dismissal, a complaint must include enough facts "to raise a right

to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007).  Further, "a court must accept as true all of the allegations contained in a

complaint," and construe all reasonable inferences in the plaintiff's favor, but the court need not accept any legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In a case such as this, a defendant's Rule 12(b)(6) motion to dismiss can challenge the legal sufficiency of a plaintiff's claim.  *See, e.g.*, *United States v. Gaubert*, 499 U.S. 315, 327 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) ("Such a dispute always presents a purely legal question; there are no issues of fact because the allegations contained in the pleading are presumed to be true."); *Executive 100 v. Martin Cty.*, 922 F.2d 1536, 1539 (11th Cir. 1991) ("Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint on the basis of a dispositive issue of law." (citation omitted)); *see also Twombly*, 550 U.S. at 548 (complaint must include "enough facts to state a claim to relief that is plausible on its face"); *accord, e.g.*, *Watts v. Farmers Ins. Exch.*, 2018 U.S. Dist. LEXIS 71030, at *8 (N.D. Ala. April 27, 2018) ("A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint.").

## DISCUSSION

Based on the controlling statutes, the applicable regulations, and the binding Supreme Court and Eleventh Circuit precedent, the court must grant this motion to dismiss.  On Plaintiff's claim under the Mandamus Act and/or the APA (and

11

accepting as true all of the fact allegations in the first amended complaint), the court lacks jurisdiction because Plaintiff cannot identify any discrete, nondiscretionary duty for the agency to act. *See, e.g.*, *Heckler*, 466 U.S. at 616; *Norton*, 542 U.S. at 64; Fed. R. Civ. P. 12(b)(1). And, on the due process cause of action, Plaintiff cannot state a claim for relief because Plaintiff has no liberty interest in the visa applications. *See* Fed. R. Civ. P. 12(b)(6); *Iqbal*, 556 U.S. at 678.

**I.    The court lacks jurisdiction over Plaintiff's claim under the Mandamus Act and/or the APA because Plaintiff cannot show any discrete, mandatory duty for the agency to act.**

As explained above, to proceed on her mandamus/APA claim, Plaintiff must allege that the consular officer or the State Department failed to take a discrete, mandatory action that it is required to take. *See supra* Legal Standards, Part A. But, in this case, Plaintiff cannot identify any such discrete, mandatory duty for the agency to act.

Accepting as true all of the fact allegations in the first amended complaint (and construing all reasonable inferences in Plaintiff's favor), Plaintiff petitioned for visas for her parents; her parents were interviewed at the consulate in Armenia in October 2023; the visas for her parents were refused; the consular officer requested additional information, which her parents then submitted, placing the visa applications into administrative processing; and those visa applications have remained in post-refusal administrative processing for more than one year. Doc. 21

at 3–4; *see also* https://ceac.state.gov/CEACStatTracker/Status.aspx?App=IV (last visited February 3, 2025); Doc. 31 at 5–8.

On the controlling statutes, the consular officer adjudicating the visa applications was required to ensure that Plaintiff's parents were not inadmissible under the INA, and could not issue any visa if it "appear[ed]"—or if the consular officer "kn[ew] or ha[d] reason to believe"—that Plaintiff's parents were ineligible for visas. *See* 8 U.S.C. § 1201(g) ("No visa or other documentation shall be issued to an alien if . . . .")[4]; *Kerry*, 576 U.S. at 89 ("Before issuing a visa, the consular officer must ensure the alien is not inadmissible under any provision of the [INA]."); *see also* 8 U.S.C. § 1202(b) ("All immigrant visa applications shall be reviewed and adjudicated by a consular officer.").

As discussed above, it is undisputed that the visas for Plaintiff's parents were refused after their interviews at the Armenian consulate in October 2023. Thus, statutorily, there is no duty to take any discrete, mandatory action that the consular officer (or the State Department) failed to take. Under 8 U.S.C. § 1201(g), the visas were refused. Under 8 U.S.C. § 1202(b), the visa applications were "reviewed and adjudicated." Those visa applications remain refused, and remain adjudicated, notwithstanding the reality that the consular officer then requested additional information, which Plaintiff's parents submitted, and placed the visa applications

---

[4] As noted above, 8 U.S.C. § 1201(g) codifies INA § 221(g).

into administrative processing.

Accordingly (again, as a statutory matter), the agency "conclude[d]" the "matter" of these visa applications "within a reasonable time" for purposes of the APA. *See* 5 U.S.C. § 555(b). And Plaintiff has not identified any "agency action" that was "unreasonably delayed." *See* 5 U.S.C. § 706(1).

Based on the applicable regulations, and the fact that the visa applications have remained in (post-refusal) administrative processing for more than one year, Plaintiff argues that "Defendants have not issued a final decision on her parents' visa cases at all." *E.g.*, Doc. 26 at 9. As such (and for APA purposes), Plaintiff argues that the visa applications have not been finally adjudicated, and that the State Department has a duty to conclude the administrative processing within a reasonable time. *See, e.g.*, Doc. 26 at 7 ("Defendants have a nondiscretionary duty to adjudicate Plaintiff's immediate relative visa applications in a timely manner."); Doc. 26 at 8 (arguing that the first amended complaint does not allege that "the applications received a final denial," and instead alleges that "Defendants failed to act on the[] visa applications").

But, consistent with the statutory requirements of 8 U.S.C. § 1201(g) and 8 U.S.C. § 1202(b), 22 C.F.R. § 42.81(a) requires that "the consular officer must [1] issue the visa, [2] refuse the visa under INA 212(a) or 221(g) or other applicable law or, [3] pursuant to an outstanding order under INA 243(d), discontinue granting

the visa." *Id.*

In this case (again), it is undisputed that the consular officer "refused the visa under INA . . . 221(g)"—i.e., under 8 U.S.C. § 1201(g). So, under 22 C.F.R. § 42.81(a), there is no duty to take any discrete, mandatory action that the consular officer failed to take. The visa applications were refused, and remain refused.

Next (as explained above), 22 C.F.R. § 42.81(b) provides that, "[i]f the ground of ineligibility may be overcome by the presentation of additional evidence and the applicant indicates an intention to submit such evidence, all documents may, with the consent of the alien, be retained in the consular files for a period not to exceed one year." *Id.*

22 C.F.R. § 42.81(b) also provides that, "[i]f the *refusal* has not been overcome within one year, any documents not relating to the *refusal* shall be removed from the file and returned to the alien." *Id.* (emphasis added); *accord* 22 C.F.R. § 42.63(c); 22 C.F.R. § 42.62(b). And, under 22 C.F.R. § 42.83(b), an "alien's registration for an immigrant visa shall be terminated if, within one year following the *refusal* of the immigrant visa application under INA 221(g), the alien has failed to present to a consular officer evidence purporting to overcome the basis for *refusal*" (*id.*, emphasis added); although 22 C.F.R. § 42.83(c) provides further for a limited, post-termination "right to have the registration reinstated . . . before the end of the second year after the INA 221(g) *refusal*" (*id.*, emphasis added). *See*

*supra* Legal background.

Here, there is no duty to take any discrete, mandatory action that the consular officer or the State Department failed to take. Rather, these regulations confirm that the visa applications for Plaintiff's parents were *refused*, and remain *refused*.[5]

Now, another applicable regulation—22 C.F.R. § 42.81(e)—does appear to provide for a duty that the consular officer arguably has failed to take within a reasonable time. But any such purported duty is not sufficiently discrete and nondiscretionary for the court to order mandamus/APA relief. *See, e.g., Heckler*, 466 U.S. at 616; *Norton*, 542 U.S. at 64.

That regulation, 22 C.F.R. § 42.81(e) ("Reconsideration of *refusal*"), provides that, "[i]f a visa is *refused*, and the applicant within one year from the date of *refusal* adduces further evidence tending to overcome the ground of ineligibility on which the *refusal* was based, the case shall be reconsidered." 22 C.F.R. § 42.81(e) (emphasis added). Stated otherwise, 22 C.F.R. § 42.81(e) states a condition under which a "refusal" pursuant to 8 U.S.C. § 1201(g) "shall be reconsidered," and Plaintiff alleges that her parents have satisfied that condition—i.e., they have

---

[5] Hypothetically, while Plaintiff has not requested any such relief, the State Department's regulatory duty pursuant to 22 C.F.R. § 42.81(b) appears sufficiently concrete that the court potentially could order that "any documents not relating to the refusal" "be removed from the file and returned to" Plaintiff's parents, if any such documents were not returned within a reasonable time. *See id. But see infra* (discussing amorphous duty to reconsider refusal).

16

"adduce[d] further evidence tending to overcome the ground of ineligibility." *See* 22 C.F.R. § 42.81(e). The plain-language argument then would follow that the "case[s]" for Plaintiff's parents "shall be reconsidered," and that—after more than one year—their cases have not been "reconsidered" (or finally adjudicated) within a reasonable time. *See* 22 C.F.R. § 42.81(e); 5 U.S.C. § 555(b).

But the dispositive problem for Plaintiff is that there is no regulation, and certainly no statute, that makes any such duty to reconsider a refusal under 8 U.S.C. § 1201(g) sufficiently concrete—i.e., discrete and nondiscretionary—such that the court could order relief. For instance, Plaintiff still has not identified the "unequivocal statutory duty to act," which is required to obtain APA relief for an alleged failure to act. *Fanin v. United States Dep't of Veterans Affs.*, 572 F.3d 868, 875 (11th Cir. 2009); *see also Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *3 (D.C. Cir. July 24, 2024) (requiring in a similar context that a plaintiff show a "crystal-clear legal duty").

Nor has Plaintiff identified any crystal-clear regulatory duty with respect to the State Department's reconsideration of a refusal under 8 U.S.C. § 1201(g). There does not appear to be any timeline or time limit for a consular officer to initiate or conclude any such reconsideration. Instead, under 22 C.F.R. § 42.81(b), the reconsideration process appears to be ongoing, or perhaps even static; either way, the period for reconsideration appears to lapse "[i]f the refusal has not been

overcome within one year," and at that time "any documents not relating to the refusal shall be . . . returned to the alien." *Id.*

There does not appear to be any regulatory scheme or structure for what any such reconsideration might entail, other than an alien's submission of "further evidence tending to overcome the ground of ineligibility on which the refusal was based." *See* 22 C.F.R. § 42.81(e).

Furthermore, other than the potential returning of documents to the alien, there does not appear to be any certification or notice requirement, or any regulatory duty for a consular officer to notify an alien that the refusal is being reconsidered, where in the reconsideration process the case may be, or that any such reconsideration has concluded.

Instead, under 8 U.S.C. § 1201(g) and 22 C.F.R. § 42.81(a), the visas for Plaintiff's parents were refused, and—even though the "case[s] shall be reconsidered" pursuant to 22 C.F.R. § 42.81(e)—those visas remain refused. Given that those visas remain refused (while under reconsideration), there still is no specific "agency action" that is being "unreasonably delayed," and that the court can "compel" under the APA. *See* 5 U.S.C. § 706(1).

Indeed, as a practical matter, this conclusion is confirmed by Plaintiff's request for relief. Plaintiff requests that the court "compel[] Defendants to promptly complete all administrative processing within sixty days." Doc. 21 at 6. But,

without any applicable statutory (or regulatory) text, the court doesn't even know what it would mean to "complete" administrative processing and/or "complete" the reconsideration of refusal pursuant to 22 C.F.R. § 42.81(e). And Plaintiff recognizes, as she must, that the court cannot order the State Department to issue (or *re*-refuse) the visas as part of any reconsideration. *See* Doc. 26 at 8–11 (discussing consular nonreviewability).

For this same reason, the court can't say how the so-called *TRAC* factors should apply in this case. *See Telecommunications Research and Action Center ("TRAC") v. F.C.C.*, 750 F.2d 70 (D.C. Cir. 1984). The visas for Plaintiff's parents were refused after their consular interviews in October 2023. So the statutorily required agency "decision" under 8 U.S.C. § 1201(g) has been made. And because that refusal remains the agency's "decision," even while under regulatory reconsideration, the court can't say what should count as "delay" where neither Congress by statute nor the State Department by regulation has said what any such reconsideration should look like. *See id.*; *see, e.g.*, *George Kabeller, Inc. v. Busey*, 999 F.2d 1417, 1423 (11th Cir. 1993). *But see Maadarani v. Mayorkas*, No. 2:24-cv-1325, 2024 WL 4674703 (E.D. Cal. Oct. 31, 2024).

Nothing from Congress or the State Department mandates anything about that (regulatory) reconsideration—how long it should take, what it entails, any direction or advisement as to the issues on which reconsideration of a particular case may

focus, any notice or certification when it is initiated, in-process, completed, etc. As a result, this court still cannot identify any duty to take any discrete, nondiscretionary action that the consular officer (or the State Department) failed to take. No amount of discovery or consideration at summary judgment can make up for the lack of any such identifiable legal duty.

Nor do the sub-regulatory materials clarify any such duty. Plaintiff points to the State Department's Foreign Affairs Manual (FAM) in an attempt to establish a duty to make a final decision regarding the administrative processing of the visa applications. Doc. 26 at 7. The section of the FAM on which Plaintiff seeks to rely, which is captioned "When a Refusal May Be Overcome," states as follows: (1) "When the applicant has presented additional evidence to attempt to overcome a prior refusal, you should re-open and re-adjudicate the case by overcoming the prior INA 221(g) refusal and determining whether the applicant is eligible for a visa"; and, (2) "A prior INA 221(g) refusal entered for administrative processing may be overcome once you can determine administrative processing is completed and you receive any required AO [advisory opinion] response or other needed information." U.S. Department of State, Foreign Affairs Manual, 9 FAM 306.2-2(A) (2024).

To the extent that this section could provide for a duty to take agency action, any duty still would not be mandatory or concrete.[6] Rather (among other things),

---

[6] Arguably, this FAM section makes any purported duty to reconsider a refusal

this sub-regulatory guidance is permissive, using the words "should" and "may," and does not include mandatory language such as "must" or "shall." *Id.*

Plaintiff may be correct that, as an out-of-circuit lower court has suggested, this ruling may allow the State Department to "issu[e] pro forma refusals while continuing to administratively process" the "cases" for Plaintiff's parents

---

pursuant to 22 C.F.R. § 42.81(e) less clear.  Actually, this FAM section seems to demonstrate that there is no regulatory duty (and certainly no statutory duty) for the State Department to undertake or finally complete any "administrative processing" at all.  The FAM section appears to differentiate so-called "administrative processing" on the one hand from the submission of "further evidence tending to overcome the ground of ineligibility on which the refusal was based" under 22 C.F.R. § 42.81(e) on the other.  The section states, "You should find that an IV [immigrant visa] applicant has overcome a refusal under INA 221(g) in two instances:  when additional evidence is presented, *or* administrative processing is completed."  9 FAM 306.2-2(A) (emphasis added); *compare* Doc. 31 at 14 (argument from Defendants' counsel that, "under the regulation, which is 22 CFR 42.81, under subsection (e), there is a mechanism for applicants when they have information in their possession that could overcome the ineligibility determination. For example, say the applicant forgot to bring a necessary document with them to the interview.  They have information in their possession that they could then submit to the consular officer and then seek to overcome that refusal determination"), *with* Doc. 31 at 14–15 (argument from Defendants' counsel that, "when it appears to the consular officer that an applicant is ineligible, say, for national security concerns, there's nothing that the applicant can produce to overcome those concerns.  And so under the INA and this regulation, the applicant's essentially out of luck.  There's nothing that they can do, no mechanism for them to overcome the refusal.  So that's where the State Department's discretionary administrative processing . . . comes in. For the benefit of applicants, the . . . consular officer, after finding that that applicant appears ineligible, will hang on to a refused application, and . . . do some additional processing just to determine whether maybe there's some information that the applicant doesn't have that could resolve those ineligibility concerns and form a basis for the State Department then on its own, not because it's required to, but a basis for the consular officer to reconsider that application").

(*Maadarani*, 2024 WL 4674703, at *8).  On the other hand, the parties seem to agree that Plaintiff's parents also could re-apply for visas.  *See, e.g.*, Doc. 31 at 11. Regardless, these policy concerns are for Congress in the first instance (and the State Department in the second), not this court.  That is particularly true given the Supreme Court's recent admonition that (as noted above), "[f]or more than a century, th[e] [Supreme] Court has recognized that the admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control."  *Muñoz*, 602 U.S. at 907 (quotation marks omitted).  *Cf. Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).

In sum, Plaintiff has not identified any basis for the court to find that the State Department has a discrete, nondiscretionary duty to take any action beyond the action that it did take:  refusing the visas for Plaintiff's parents after their consular interviews.  Because the State Department already has fulfilled its only clear, mandatory duty to take agency action (*see* 8 U.S.C. § 1201(g); 22 C.F.R. § 42.81(a)), the "matter" of the visas for Plaintiff's parents has "conclude[d]," and there is nothing more that the court can order the State Department to do "within a reasonable time" pursuant to the APA.  *See* 5 U.S.C. § 555(b); *accord Reese v. United States Dep't of State*, No. 1:23-cv-1643-RDP, 2024 WL 3381898, at *3 (N.D. Ala. July 10, 2024) ("[T]he Department of State has acted on Plaintiff's application

. . . It has issued a decision adjudicating and denying the visa application."); *Karimova*, 2024 WL 3517852, at *3–4 (holding that § 555(b) of the APA does not "place[] a clear, non-discretionary duty on [a] consular officer to re-adjudicate [an] already-refused application" because the "'matter' has already been 'conclude[d]'" (citations and some quotation marks omitted)).

Thus, Plaintiff cannot show for purposes of the APA that the State Department failed to take a discrete, mandatory action that it is required to take, much less a right to mandamus relief that is "clear and indisputable" (*Serrano*, 655 F.3d at 1263). Consequently, the court lacks jurisdiction over Plaintiff's mandamus/APA claim. *See Bouarfa,* 75 F.4th at 1161; *Serrano*, 655 F.3d at 1263; *Norton*, 542 U.S. at 64; Fed. R. Civ. P. 12(h)(3).

**II.    On the due process cause of action, Plaintiff cannot state a claim for relief because she has no liberty interest in her parents' admission to the country.**

Separate from her mandamus/APA claim, Plaintiff also alleges a claim for violation of her due process rights, alleging that "[t]he combined delay and failure to act by Defendants has irrevocably harmed Plaintiff by causing family separation between Plaintiff and her parents."  Doc. 21 at 6.  But the Supreme Court's recent decision in *Muñoz* forecloses Plaintiff's due process claim.  *See* 602 U.S. 899.

In *Muñoz*, the Supreme Court held that a plaintiff has no liberty interest under the Due Process Clause with respect to a family member's admission to the country.

23

*See* 602 U.S. at 909 ("[W]e hold that a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country."). As the Supreme Court explained, "Congress can use its authority over immigration to prioritize the unity of the immigrant family," but "the Constitution does not require this result." *Id.* "Thus, while Congress may show special solitude to noncitizen spouses, such solicitude is 'a matter of legislative grade rather than fundamental right.'" *Id.* (citing *Kerry*, 576 U.S. at 97 (plurality opinion)).

Under *Muñoz*, Plaintiff has no liberty interest in her parents' admission to the country, and consequently no liberty interest in any alleged delay as to their admission to the country. As a result, on the due process cause of action, Plaintiff cannot state a plausible claim for relief. *See* Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 548.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (Doc. 24) is **GRANTED**. This action is **DISMISSED WITHOUT PREJUDICE**. The court separately will enter final judgment.

**DONE** and **ORDERED** this February 3, 2025.

_____
**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE